UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| ROBERT WINFREY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:07-CV-159-SNLJ |
| | ) | |
| GLEN BABICH, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

This matter is before the Court on two motions for summary judgment (#52/57), filed on June 3, 2009 and June 11, 2009, respectively, by the defendants. The first motion for summary judgment (#52) was filed by defendants Babich, Kasting, and Vinson, and the second motion for summary judgment (#57) was filed by defendants Dwyer, Phillips, Steele, and Wilhite. Responsive pleadings have been filed and the matter is now ripe for disposition.

**I. Case Summary**

This is a § 1983 action in which plaintiff alleges that defendants violated his Eighth Amendment right against cruel and unusual punishment by failing to address his need for medical care and treatment. Plaintiff, formerly an inmate at the Southeast Correctional Center in Charleston, Missouri (SECC), is now an inmate confined at the South Central Correctional Center (SCCC) in Licking, Missouri. Defendant Dr. Glenn Babich is an employee of Correctional Medical Services (CMS) and was responsible for providing medical care to inmates at the SECC. Defendant Stephanie Kasting is the Health Services Administrator for CMS at SECC. Defendant Debbie Vinson is the Director of Nursing for CMS at the SECC. Defendants Charles Dwyer and Troy Steele are the Superintendents of SECC. Defendant Paula Phillips-

Huffman is the Acting Superintendent of SECC. Defendant Travis Wilhite is a Corrections Officer at SECC.

The following facts are uncontested:

Plaintiff was confined at SECC from approximately 2003 until September 2005, and from July 28, 2006 until August 9, 2007, when he was transferred to SCCC in Licking, Missouri. In the intervening period between September 2005 and July 2006, plaintiff was transferred to a facility in Iowa.

Between 2003 and September 2005, plaintiff's medical records at SECC show one complaint of chest pain on November 20, 2004. A nurse assessed his vital signs and found normal breathing, a strong heart rate, and no signs of acute distress or sweating. From January 2004 until his transfer to Iowa in September 2005, plaintiff submitted 29 Medical Services Request (MSR) forms, but none were for complaints of chest pain.

While at SECC, plaintiff was enrolled in the Hepatitis C Chronic Care Clinic, a program for patients with chronic diseases like high blood pressure, diabetes, or hepatitis, diseases that may extend for period of time or even a lifetime. Inmates that participate in the Clinic are seen for regularly scheduled lab testing and appointments with nurses and physicians. These appointments are scheduled and do not require an inmate to complete an MSR. As part of his initial screening in January 2005, plaintiff's blood work was performed and showed abnormal cholesterol levels. As a result, plaintiff was enrolled in a second Clinic for Internal Medicine, where his cholesterol levels would be monitored and his treatment options reviewed with him. Dr. Babich met with plaintiff on March 10, 2005 to discuss his blood test and his options, including the complications involved with taking medication for the high cholesterol problem. After this discussion, plaintiff chose to forgo the medication, opting instead to make lifestyle

changes to manage his cholesterol. Although plaintiff alleges that his cholesterol levels were "dangerously high" at this time, his lab results indicated that he was at a "zero to one" risk factor category because his blood pressure and heart rate were acceptable, and he was not overweight. Plaintiff was scheduled for a follow-up laboratory test for his lipid levels 120 days later.

An electrocardiogram was ordered as part of plaintiff's preliminary work for the Chronic Care Clinic, but it was not performed because plaintiff informed his psychiatrist that he no longer wanted the treatment, resulting in the cancellation of all of his scheduled testing. Plaintiff continued to get his blood tested, including on June 15 and July 12, 2005. Dr. Babich examined plaintiff on July 20, 2005, and in response to test results showing an excess of lipids in plaintiff's blood, Dr. Babich prescribed Niacin, a cholesterol-lowering medication. On August 15, 2005, plaintiff's blood was taken again and his cholesterol and triglycerides were reported to be within normal levels. Plaintiff's blood was taken again on September 12, 2005, and though his cholesterol level was found to be "borderline high," his triglyceride levels were within normal levels. An EKG was ordered for plaintiff on October 17, 2005 as part of his 12-month Clinic work-up, but he was transferred to Iowa before his scheduled appointment.

On April 14, 2006, approximately seven months after leaving SECC, plaintiff suffered a heart attack while playing basketball in the Iowa Department of Corrections. Plaintiff was admitted to the University of Iowa Hospital, and he had a stent placed in his right coronary artery. He was readmitted to the hospital on May 24, 2006 for additional treatment of his coronary artery disease, and underwent a second surgery of a coronary artery bypass graft on May 30, 2006.

On July 28, 2006, plaintiff was returned to SECC, where he was immediately received by the nursing staff. Plaintiff's prescriptions were renewed for Aspirin, Metoprolol, Furosemide,

Liptor, Lasix, Plavix, Atorvastatin and Clopidogrel Bisulfate, all medications used in the treatment and prevention of heart attacks, high cholesterol or other heart-related issues. Plaintiff filed MSRs on August 8 and 9, 2006, requesting to see a doctor for a follow-up appointment regarding his heart surgery. Dr. Babich saw plaintiff on August 11, and gave a verbal order for additional medication. On August 21, Dr. Babich again saw plaintiff and recorded his complaints of intermittent chest pain that subsided on its own, but the doctor reported no other symptoms. Dr. Babich diagnosed plaintiff again with coronary artery disease and hyperlipidemia, educated him about diet and exercise, scheduled his chronic care visits, scheduled a lipoprotein profile, recommended a yearly EKG, and prescribed ASA, Plavix, Furosemide, Metoprolol and Crestor.

Following plaintiff's diagnosis, plaintiff had either EKGs, x-rays, or blood taken and analyzed on the following dates: August 21, 2006, August 25, 2006, August 27, 2006, August 30, 2006, September 5, 2006, September 7, 2006, October 3, 2006, November 7, 2006, November 9, 2006, December 13, 2006, May 21, 2007, May 23, 2007, and May 24, 2007.

## II. Summary Judgment Standard

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. *New England Mut. Life Ins. Co. v. Null*, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *Mt. Pleasant v. Associated Elec. Coop. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed.R.Civ.P. 59(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." *Poller v. Columbia Broadcasting System, Inc.*, 368 U.S. 464, 467, 82 S. Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. *Mt. Pleasant*, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Buller v. Buechler*, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chem. Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976). With these principles in mind, the Court turns to the discussion.

### III. Discussion

#### A.

The Eighth Amendment prohibition on cruel and unusual punishment extends to protect prisoners from "deliberate indifference" to serious medical needs. *Vaughn v. Gray*, 557 F.3d 904, 908 (8th Cir. 2009). "Deliberate indifference has both an objective and a subjective component." *Butler v. Fletcher*, 465 F.3d 340, 345 (8th Cir. 2006). The objective component

requires a plaintiff to demonstrate an objectively serious medical need. *Grayson v. Ross*, 454 F.3d 802, 808-09 (8th Cir. 2006). A "serious medical need" is one "that has been diagnosed by a physician as requiring treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d. 778, 784 *(quoting Camberos v. Branstad*, 73 F.3d. 174, 176 (8th Cir. 1995)); *see also Simmons v. Cook*, 154 F.3d. 805, 807-08 (8th Cir. 1997) (*quoting Moore v. Jackson*, 123 F.3d. 1082, 1086 (8th Cir. 1997)("A medical need is serious if it is obvious to the layperson or supported by medical evidence.")).

In order to satisfy the subjective component of an Eighth Amendment medical claim, a plaintiff inmate must show that the prison officials knew of, yet deliberately disregarded, an excessive risk to the inmate's health. *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (*quoting Logan v. Clarke*, 119 F.3d. 647, 649 (8th Cir. 1997)). A prison official may be liable under the Eighth Amendment if she knows that an inmate faces a substantial risk of serious harm and fails "to take reasonable measures to abate it." *Coleman* at 785 *(citing Farmer v. Brennan*, 511 U.S. 825, 847 (1994)). The plaintiff must establish a "mental state akin to criminal recklessness." *Vaughn v. Gray*, at 908 (*quoting Gordon v. Frank*, 454 F.3d 858, 862 (8th Cir. 2006). Moreover, to create an actionable Eighth Amendment violation for delay in treatment, "the information available to the prison official must be such that a reasonable person would know that the inmate requires medical attention, or the prison official's actions (or inaction) must be so dangerous to the health or safety of the inmate that the official can be presumed to have knowledge of a risk to the inmate." *Plemmons v. Roberts*, 439 F.3d 818, 823 (8th Cir. 2006). Delay must be prompted by "obduracy and wantonness, not inadvertence or error in good faith," before liability may be imposed. *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986).

B.

Plaintiff alleges that his requests for medical care were ignored or delayed, and that the "treatment administered or prescribed were inadequate to either diagnose plaintiff's condition or cure and relieve [his] condition." Plaintiff's high cholesterol levels alone, although potentially harmful, are not the sort of glaring injuries and maladies that one would normally associate with an "objectively serious medical need." But even if high cholesterol level, combined with the reported chest pains, presents a serious medical need, plaintiff has nonetheless failed to satisfy the subjective component of an Eighth Amendment claim. He has not alleged facts that would support a finding that any of the health care providers or prison officials had actual knowledge of, yet disregarded, his high cholesterol levels. Although plaintiff averred that "he complained of chest pain to Dr. Babich three or four times before his transfer to Iowa," and that a nurse "made a cursory assessment [of a chest pain complaint] and there was no follow-up," this is not enough to satisfy deliberate indifference to his serious medical needs. In fact, all of the uncontroverted facts point the other way. His high cholesterol level was recognized upon a blood test, and the medical staff took steps to correct the issue. He saw Dr. Babich numerous times from early 2005 until his transfer to Iowa in October of 2005. Plaintiff chose to make lifestyle changes at first, and when that failed to produce results, Dr. Babich prescribed him medication. In addition, plaintiff was enrolled in the Hepatitis C Chronic Care Clinic that afforded him routine lab testing. Upon his return to SECC following his heart attack, Dr. Babich again saw plaintiff and prescribed numerous medications. EKGs, x-rays, and blood tests were performed over a dozen times between August 2006 and May 2007. This is hardly deliberate disregard of a serious medical need, but rather is evidence of adequate and appropriate treatment and care.

There is also no evidence that the delay of treatment that plaintiff has alleged constitutes an actionable Eighth Amendment violation. An actionable delay would require "obdurancy and wantonness" to his complaints of chest pain, yet nothing suggests that this was the case. Plaintiff never submitted MSR forms complaining of chest pain, but alleged instead that he complained directly to Dr. Babich about his chest pain "three or four times," presumably *while in his care*. Again, the Court sees nothing but adequate, appropriate, and *timely* medical care as stated in the facts in the record. Accordingly, there are no facts alleged that would support a finding that the medical staff failed to take reasonable measures to abate his high cholesterol levels, or failed to take care of his medical requirements upon his return from Iowa. Plaintiff's Eighth Amendment claim of deliberate indifference to his serious medical needs necessarily fails.

Finally, defendants Dwyer, Phillips, Steele, and Wilhite filed a separate motion for summary judgment to address issues of *respondeat superior* liability and qualified immunity for their supervisory positions at SECC. Because there are no underlying constitutional violations in plaintiff's claim, it is unnecessary to address those liability issues, and their motion for summary judgment shall be granted as well.

**IV. Conclusion**

Plaintiff has failed to show that the defendants were deliberately indifferent to his serious medical needs and therefore his Eighth Amendment claim fails. The defendants' motions for summary judgment shall be granted.

Dated this __10th__ day of February, 2010.

_____
UNITED STATES DISTRICT JUDGE